We welcome you to our third day here in Jacksonville for this week's sitting. Two quick announcements before we get started with our first of two cases today. The first is, as I've said earlier in the week, that Judge Legault and I are absolutely thrilled to be sitting with Judge Joflat this week, especially in the house that he built here in the Joflat courtroom. Thank you. The second is an announcement that I had heard when I was practicing, when I was a law clerk, and I always thought it was good advice. We have our traffic light system for the time, counting the time. The green light means go ahead. The yellow light means slow down. We're about to stop. And then the red light means stop. And then a very wise judge would say the red light is not aspirational. So when you see the red light, please do stop and we'll get moving on. With that, we'll call our next witness. Judge of Social Security Good morning, counsel. Good morning. May it please the court. My name is Sarah Jacobs and I represent the appellant, Mr. Raper, in his disability appeal. On appeal, Mr. Raper has alleged three errors. One relating to the judge's evaluation of his treating physician, Dr. Razak. The judge's evaluation of Mr. Raper's credibility. And the third being a constitutional issue relating to whether or not Mr. Raper's case should have been reassigned to a properly appointed ALJ pursuant to the appointments clause. So I think the I know I'm very interested in the third issue, not that the first two issues aren't important, but the third one is a little more complicated, I think. So and I suspect that's why you're here for oral argument. I agree with that, your honor. And since the party's briefing concluded in this case, there were two notices of supplemental authorities filed. The first being the Ninth Circuit case in Cody versus Kajikazi. And then we have the Brooks case. I think the panel is familiar with both of those. So I want to jump right into it if I can. Tell me what the appointments clause violation was in this case. There is no dispute in this case. At the time of Mr. Raper's first hearing with Judge Sethridge, he was not constitutionally appointed on August 8th of 2017. So there's the initial decision. The decision gets appealed to both the Appeals Council and then ultimately to the District Court. And then, as I understand the procedural history, and correct me if I'm wrong, the Social Security Administration then says, you know what, there isn't evidence backing up because of the question that was asked the vocational expert about the step 5 finding. And so we ask that you vacate the decision and send it back to get a correct record in order to be able to make a finding. And the district judge probably very, very happily says, absolutely, go ahead and remand it. The Appeals Council then vacates the decision and sends it back for a plenary full hearing. Do I have anything wrong there? The only thing missing would be that the Appeals Council, when they entered their remand order in 2019, they specifically affirmed the finding of disability that Judge Sethridge entered as of August 8th of 2017. That's right. In other words, the good finding for you. Correct. They kept that there because no one appealed that. Correct. Right. Okay, but everything else I said was correct, right? Yes, Your Honor. What is the effect of the practical and the legal effect of vacating a decision of the ALJ? When the Social Security Administration considers a case on remand, all findings are made de novo. You're right, but that's not exactly what my question is. What is the effect, the legal effect, of the decision that has been vacated? That decision is no longer a valid decision. It's null and void, right? In fact, the regulations from the Social Security Administration say that, and our own case law say when a case has been vacated, the underlying decision is void, right? Yes. Okay, so I guess my question, having said all that out, is once the decision is void and it goes back for a de novo hearing in front of the the same ALJ, how is there an appointments clause violation at that point? Because the very bright line rule in Lucia, and this is coming from the United States Supreme Court, it says the appropriate remedy for an adjudication tainted with an appointments clause violation is a new quote hearing before I properly appointed. But here's the issue to me, and this is the I think getting the heart of what I am having trouble with, which is the tainted, a decision that's tainted by it, the remedy is X and Y. But to get a remedy, to get what you're asking, there has to be a tainted decision. How is there a tainted decision here where the decision that was tainted, you got to win, you won, you got remand, the ALJ got it wrong, the district court vacated it, the Appeals Council vacated it, and it's null and void. I think the Ninth and the Fourth Circuit correctly concluded that this is considered one proceeding. So that 2017 decision just does not disappear from the record. That constitutional taint attached to that the recent 2020 decision. How can it be null and void on the one hand, and yet still be in existence such that it taints anything that happens no matter what? Like so for example, let's give it a hypothetical. Imagine we went back in the ALJ and you got everything you wanted on the second hearing. Would you be here and say, this is horrible, this is terrible, we have an Appointments Clause violation, and we didn't get our remedy? No, Your Honor, I would not. Of course not. And no one would say that one decision is tainted by the other, because the other decision was gone, the ALJ did a full de novo hearing, and lo and behold, we got a corrected decision. But that flies in the face of the Supreme Court binding precedent in Lucia. But that's only as to the remedy. In other words, the predicate would seem to me that you have to have violation first, and once you establish violation, then clearly you get a remedy. But if the only thing that could have been violated was decision one, how is decision two, after it had been vacated and after we all agree a de novo hearing happened, how is that a violation? In other words, by that point, he had been reappointed. So what violation was there when he made that decision? The Supreme Court says that constitutional taint follows into that 2020 decision. So his further involvement violated the constitutional, the appointment clause issue. So on remand, this... What evidence is there of that? I mean, we just assume that? No, that's what the Supreme Court said in Lucia. No, that's what the Supreme Court said, why we have a remedy, what we do. But what we have here is a vacated decision, and once it's brought up, you have now an appointed judge. In other words, they've fixed the problem. So once, I guess what I'm saying is, or what I'm asking is, once the problem is fixed, why do you get a remedy for something where you already got a vacated decision? In other words, why do we assume it's tainted up front such that it's a violation? If you look at Lucia's language, it says specifically that we add one more thing today, the official cannot be the same judge even if he has now receives or receives sometime in the future a constitutional appointment. What's the big procedural difference, though, in Lucia than in your case? I don't think there is one. Well, there seems to me to be a big one, and one is that he actually objected to the initial decision. The initial decision was there, and there was a remedy for that, and the remedy is we got to send it to a different judge. But in Carr versus Saw, the Supreme Court held that this is a timely objection. It was raised in the district court. You're here because it is a timely objection. That's not the question of whether it's timely or not. The only question is, procedurally, the issue flowed from the fact that that original decision was still a valid decision in Lucia. Here, we all agreed, I thought, that the first decision is null and void. It's gone. I think part of the concern with the Supreme Court was, the concern was that the ALJ would not be expected to take a look at the case with the fresh eyes that Mr. Raper deserved. And that sort of relates to the treating physician argument that was raised. And if you look at Judge Detheridge's first decision versus his second decision, the treatment of Dr. Razak's opinion is the prime example of why the Supreme Court said a new judge must be assigned for a fresh look. . I've run a red line versus the prior decision and the second decision and it looks to me, while there's a couple sort of stock language things that are the same, that there is a lot of red ink, if you use a red line, all over the opinion. It looks to be a completely different opinion. Every finding has different parts, different language, added things that have happened and essentially different analysis than from the initial decision. Do you agree with me on that? No. Respectfully, I disagree. Okay. If you look at the ALJ's treatment of Dr. Razak's opinion in the first decision and if you look at the testimony that was taken at the hearing on remand, it was made very clear to that judge that Dr. Razak was the author of that opinion. If you look at the ALJ's second decision, it almost mirrors his first findings from the 2017 denial. The finding is the same. The ultimate finding is the same, but the analysis is quite different, isn't it? That is the Supreme Court's concern with Lucia. Let's ask this. Let me ask it this way. I read the transcript of the second hearing. The second hearing starts with, judge, we're going to hear from the petitioner, from the applicant in this case, and here is the record, the exhibits one through 19, and then somebody says, judge, exhibits one through 19 is missing something. Do you remember this part of the transcript? No. Okay. Well, as I read it, and you should go ahead and take a look at it, someone says the original opinion isn't in that exhibit one through 19. Do you know who says that? The attorney. The attorney. Or the representative from the original person, not the Social Security side. In other words, the judge was not going to look at his prior decision. It wasn't an exhibit that was there for the prior decision, and only the representative from the petitioner is the one who put it into evidence, who put it before there. How is that, how can we then say that the judge who looked at this thing is tainted by the very thing that the petitioner put in front of him? Your Honor, I do see my time is up. Well, we'll have time to talk about it in your rebuttal. Thank you. Thank you, Your Honor. Good morning. Good morning. May it please the Court. Sonia Carson for the Commissioner on Social Security. I'll be using ten minutes to address the constitutional issue, and my colleague, Mitch Winters, will be addressing the merits. Mr. Raper's argument is that this case is just like Lucia, but Judge Luck, as you've observed, that conflates the question of the violation and the remedy. You look at, I have a tremendous amount of respect for all of my colleagues, but Judge Bumate in particular, and you read his decision out of the Ninth Circuit, and he seems to suggest, as Judge Schoflat's question indicated, that there is just an inherent taint when the same person makes the decision, and that that taint sticks with the decision no matter what happens. Why is that not true? Because it's simply a misunderstanding of Lucia. Lucia arose in the context of an uncorrected appointments clause defect, and the remedy that Lucia awarded was designed specifically to ensure that that sort of structural constitutional defect. But there was a discussion, a very specific discussion by Justice Kagan about that official cannot be Judge Elliott even if he has now received or receives in the future a constitutional appointment. Judge Elliott has already both heard Lucia's case and issued an initial decision on the merits. He cannot be expected to consider the matter as though he has not adjudicated it before. To cure the constitutional error, another ALJ or the Commission itself must hold the new hearing to which Lucia is entitled. That is very specific language. That is not theoretical. It is telling us that the court had a concern that once there is a taint, it cannot be cured other than through another person listening to the merits. Which is what Judge Bumente wrote. Your Honor, I have a few responses to that point. Your Honor is quoting from 2055 of the Supreme Court's opinion. At the end of that discussion, there is a footnote, and that is footnote 5. That is where the court talks about Justice Breyer's disagreement and the difference between the structural nature of the appointments clause, which is about transparency and accountability. It is about ensuring that if a claimant is dissatisfied with the decision that he or she has made, that the political responsibility for that can go from the Commissioner to the President. Then the discussion about the merits that Your Honor has quoted is about incentives to raise appointments clause challenges. Here is the salience of that. A Social Security claimant is not, as a practical matter, going to undertake the time and expense of challenging a decision if he or she believes that it is simply going to be rubber stamped. Unless a claimant who receives a decision from an improperly appointed judge believes that litigating will make a difference, that structural constitutional error will not reach the courts and will go uncorrected. The discussion in Lucia about the merits is about ensuring that appointments clause challenges reach the courts because litigants believe that there is some practical point in taking them. Lucia is not about bias or about prejudice or about fear that a judge can't reach a new decision afresh if he or she looks at it a second time. If a decision of this court were to be taken before the Supreme Court on certiorari and vacated and remanded, we would have no reason to think that the panel to which it returns would be unable to examine the matter afresh. What we have here is a corrected appointments clause defect and an argument by Mr. Raper that somehow the original defect, which as Judge Luck observed is no longer either legally or practically a part of the proceeding, can somehow leapfrog. So is counsel, is the critical fact or difference that the original decision was vacated? In other words, without that fact, you would have less of a leg to stand on. Do you agree? I agree that it would be a different case. Do you agree you'd lose? So in Your Honor's hypothetical, I would want to understand better the difference between the facts that you're positing and Lucia, and so let me explore that if you don't mind. Lucia, as Your Honor correctly observed, involved an appointments clause violation that was extant at the time of the district court challenge. That simply is not the circumstance here. If it would be just for, we accept the findings one through four that are tainted, and we only remand for you to take a little bit of additional evidence on five. That could happen under the Social Security statute as I understand it. Limited remands are allowed, and so a district judge could say, I'm accepting and affirm findings one through four, those are done, but finding five, there's a little bit of a problem with it and I'm remanding for some additional evidence to be taken. That could happen. I mean, theoretically yes, but I think this, I want to make sure we don't lose sight of the distinction between the merits issue and the constitutional issue here. We're not, but my point is, if that was what happened here, then you'd have one through four that were still in existence, it would be extant, and then you'd have five that might be a little bit different. That would be a problem, would it not? It would certainly be a different case than the one- No, it would be a different case. That would be a problem constitutionally, would it not? So Your Honor, I can't agree with that because- Why? Tell me why. Because what we have here is a decision maker who is constitutionally appointed at the time that anything is written as to Mr. Raper's eligibility for benefits. We don't have a circumstance where a case goes up in part and then part of it remanded and part of it isn't, and in the meantime we have an appointments clause defect that is extant at one point and cured at another. You have a little bit of that because, and I think this is a point your opposing counsel raised, part of this was sort of not appealed and accepted by everyone. There was the part at which he was disabled from this date before, but not this date afterwards, and I may be flipping that. So some of the decision is part of the decision that is now the decision of this case, and only part of it was sent back. So does that not create the problem? How is that valid? How is it valid for the remand to include a decision that no one appealed but that was improperly made because the person didn't have the ability to make that decision? I will defer to my colleague from the Social Security Administration about whether or not that timing is correct. My understanding is that at the time that ALJ Dethridge had, there's no dispute, been constitutionally appointed, that the issue that was before the Social Security Administration was limited to eligibility for benefits, in other words, that the scope of the matter before properly appointed ALJ Dethridge was coextensive and coterminous with the scope of the issue in this appeal. But as a legal matter, what we are talking about is whether a remedy that the Supreme Court in Lucia crafted in anticipation of particular circumstances should be extended to a case where its animating rationales are not present. And remember here, the point for Lucia purposes is not just to encourage an individual litigant to challenge an uncorrected appointments clause violation, it's to encourage the agency to come, as SSA has done in this case, at a systemic level so that the courts are not burdened with case after case of a litigant coming up and saying, well, they fixed the appointment for Judge 1, but my decision came from Judge 2, and so now I'm here challenging that remedy. I think we can't lose sight of the fact that here, we are dealing not with a constitutional clause that is concerned with taint or bias or prejudice in any of the senses that Mr. Raper has used them, we are dealing with a structural constitutional issue with a formal remedy that has been not only achieved here, but that serves exactly the purposes that the appointments clause is intended to protect, which is transparency and political accountability. It would be very difficult to imagine how the position that Mr. Raper is advocating here could be limited either to the social security context or even in time. It's not infrequently the case that a claimant who is disabled becomes, because of their injury, more disabled over a period of time and then comes back to the Social Security Administration some years later and says, my benefits need to be redetermined. Nothing in Mr. Raper's position here would prevent that litigant. Here we are about six years down the line, imagine we flash forward ten years down the line from saying, well, but the taint in the original decision back a decade ago has persisted because I have not received the remedy of a hearing before a new ALJ. I want to emphasize in my remaining time that the Lucia remedy is an extraordinary one, because as a matter of course, courts generally do not reach into an agency's operations at the level of specifying what adjudicator is eligible to hear a case. Here there are structural considerations on both sides that I would urge the court auger Thank you. Thank you. Yeah, they split the time. May it please the court, Richard Winters for the Commissioner of Social Security. And counsel, I would just, because we didn't get too much of it with your opposing counsel, I would just not maybe delve too deeply into the merits issues, even though I know you're prepared to do so. The panel may have some questions for you, but I wouldn't get too deeply into it because I don't want to sandbag your opposing counsel with only a few minutes that she has. Right. Thank you. I thought I might begin by clarifying procedurally what happened in this case. When the ALJ's first decision was appealed to the district court, at the briefing stage, the commissioner filed a motion to voluntarily remand the case because of a deficient step five finding made by the ALJ. And in the motion, because the ALJ had found that the claimant had become disabled as of August 8th, 2017, and the reason was his age category had changed and under agency policy he was automatically determined to be disabled. So in the motion to remand, the commissioner said that the remand would be only for the period prior to August 8th, 2017. So it was only a partial vacater of the order. Right. And the motion was unopposed by the claimant. And it went back to the appeals counsel and in its order remanding the case to the ALJ, the appeals counsel said, we are affirming the decision that he's disabled as of August 8th, 2017, and they pointed out the error that the ALJ made at step five and sent it back. And then as you pointed out, it was a de novo review of the record. But when that affirmance happened of that portion of the decision, the ALJ, when he made that decision, was not properly commissioned, correct? Correct. I wonder, and I'm just asking out loud, I don't know, and you may not be the one that asked this too, and I'm going to ask this of your opposing counsel, but I wonder what effect the partial vacater has as opposed to a full vacar. In other words, if this were a case where everything had been vacated and it was, the entire order was null and void, is that a different, is that different, does that have different constitutional implications, especially on the argument obtained than a partial vacater? And I'm just, I don't know the answer to that. Right. Well, I'm thinking that other than the finding that he was disabled as of August 8th, 2017 because of the age category change, the rest of the decision was completely null and void. The ALJ took a fresh look, held another hearing, and not only took vocational expert testimony, but also heard from the claimant again about his condition during the relevant period, which was 2013 to the 2017. Thank you, counsel. Turning to the merits of the case, if I could. As I mentioned, the case involves a very limited remote period of time. And so the question before the court is whether the ALJ's decision, that claimant was not disabled during that period of time because he was capable of performing a reduced level of sedentary work, whether that decision is supported by substantial evidence, which is a standard that the Supreme Court recently reiterated in Vistek v. Berryhill, is not high. Is that really the issue? You know, as I read the brief of the appellants here, it seems to me that they're saying that there's a legal problem rather than an evidentiary problem with the ALJ's finding. In fact, I think if you look at the issues themselves, it is that the ALJ applied the correct—whether the ALJ applied the correct legal standard in dealing with the opinion of the treating physician, and then whether the ALJ applied the correct legal standard with regard to his subjective testimony regarding pain. Am I wrong on that? No, that's the argument that they make. And we also—we respond that the ALJ applied the correct legal standard to both of those issues, and that substantial evidence supports the ALJ's findings on those two issues. And so turning to the medical source statement at issue, and what I'll say in the brief time that I have, it also responds to the claimant's subjective complaints finding. This court said in Hunter that a reviewing court must not second-guess the ALJ about the weight the treating physician's opinion deserves so long as the ALJ articulates specific justification for it. That's the legal standard. And the ALJ did exactly that. The ALJ explained why the opinion was entitled to some weight to the extent it was consistent with sedentary work, for example, but walking and— I think the argument is, though, that there was no—that while the ALJ sort of incanted it's contrary to the evidence, that there was no discussion of what was contrary. There was no statement of this is why it's contrary pointing to this, that, and the other thing. Right. I see my time is out. With your permission, I'll respond briefly. Respond, and then we'll hear from your opposing guys. Well, in the paragraph in which the ALJ made the finding, he did not repeat all the evidence that was in the decision, and it's proper to read an ALJ's decision as a whole. And as the district court said, there's 25 paragraphs about the evidence that support the sedentary finding and the other findings as well. Thank you, counsel. Thank you, Your Honor. We did leave off where you had posed a question. If you could just—I'm sorry, repeat that. I forgot it, so why don't you— Okay. Well, I think the commissioner really tries to focus on footnote five of Lucia, and it really is not the holding of Lucia. In the footnote, it does say, we do not hold that a new officer is required for every appointments clause violation. And that's really what they seem to focus in on their brief, but it ignores the following language where it says, you know, if there is no other ALJ that can hear the case, that would be that kind of situation. But that's not what happened here. The active commissioner did ratify the appointment involving the ALJs in 2018, so this court definitely can remand Mr. Raper's case for a hearing before a properly appointed ALJ who does not have that constitutional taint attached from that 2017 decision. So this is a circumstance where the court can remand it. I just think we—to me, it's the issue of whether we're going to assume something is tainted necessarily where it's been vacated. I think that's what I'm having the most problem with. There's no doubt that if the decision that—the negative decision for you was still in effect in some way and that impacted what happened below, then I think you'd have a much better case and maybe even a winning case. But I—from my perspective, I'm having trouble understanding that where the Social Security Administration asked that it be vacated, that the Appeals Council did vacate it, that the regulations and case law both state that where it's vacated, it is essentially null and void. And then the court went on and held a completely de novo hearing where it appeared to me as if he didn't even know that there was a prior decision at the beginning of the hearing, how we can say as a matter of law, no matter what, that that's tainted. That's what I'm having trouble with. But the Appeals Council was well aware of the Lucia decision at the time of their remand order. All they had to do was include one sentence in there instead of knowingly violating Mr. Raper's constitutional rights. All they had to do was include one sentence in that remand order that the case should be reassigned to a new ALJ to hear his case on remand. It would be really nice if that happened, obviously. I mean, there's no doubt that administratively it'd be really great if we didn't have to have this whole argument. But the question is, it did happen. And is doing that after having vacated the decision, meaning the decision being null and void as a matter of law, does that automatically taint everything that happened afterwards? Yes. This is one proceeding. And that's exactly what the . . . Is it fully . . . What is the policy that is animating the new judge requirement? Social Security ruling 19-1P. No, no, the policy. What is the policy animating foreclosing the ALJ from hearing the matter? The Supreme Court's decision in Lucia specifically says the appropriate remedy is . . . Lucia said not necessarily never case. So what is the policy that emanates it? No, the holding of Lucia . . . I'm not talking about what the holding is. I want to know what the policy is. Well, that's the issue. Social Security hasn't implemented any sort of policy. I think what Judge Joffa is asking is why. Why is this the case? Why in ALJ . . . In other words, your opposing counsel got up here and said, if it were us and one of our decisions got vacated by the Supreme Court, it would go right back to us, and no one would assume that we were biased by our prior decision. But there wasn't an appointment clause violation in that . . . Well, we have constitutional violations in all kinds of cases, and they go back to the same district judge, even structural errors. But here we have the Supreme Court . . . Back to the same district judge. So the question is, what is the policy that drives this one, that the ALJ can't hear it, but a district judge could hear it? What's the difference? The difference is the ALJs before 2018 weren't properly appointed. That's a constitutional error, and all I'm saying is, we correct constitutional errors all the time, and we send them to the same district judge. So what is the reason behind not allowing the ALJ to handle the matter? The Supreme Court's concern in Lucia . . . You're not understanding what I'm saying. Forget the Supreme Court. Why can't the ALJ hear it? Is it because he's incapable? He can't be . . . Necessarily biased? Not necessarily biased. Well, do we assume that the ALJs are of inferior quality? I'll put it that way. I wouldn't say they're inferior quality. Well, what is it? They couldn't be expected to take a fresh look at the case, and I think that's exactly what happened . . . District judges take fresh looks all the time, even with constitutional errors, even with structural errors. So what is the reason why the ALJ can't do that? Because . . . It has to be because somehow or another the individual is incapable. Something's wrong with them. That's what the Supreme Court held. Not capable of setting aside the error and starting over. Yes, that's exactly it, Your Honor. Well, I think we ought to have a whole new system then. I'm serious. You might as well have secretaries inside these cases, or anybody. Somebody doesn't know anything. Go ahead. I'm through. Thank you, Counsel. Thank you, Your Honor. We appreciate the argument. We'll wait for counsel to switch out for our next case.